Case 18-3262 Bevan & Associates LPA Inc et al. v. Richard DeWine et al. Oral argument, 15 minutes per side. Mr. Breitfeller for the appellants. Judge Cook, I am reserving five minutes. Yes, sir. Thank you. Good morning. May it please the Court, I'm Ralph Breitfeller. I'm here on behalf of the plaintiff appellants, Bevan & Associates, and two individual lawyers, Tom Bevan and Pat Walsh. The appellants are asking the Court to reverse the District Court's decision and find that the ban on solicitation of authority to represent claimants or employers found in Ohio Revised Code section 412388 is unconstitutional. In the decision below, the District Court rewrote the statute to essentially include two provisions, the most important one being a provision saying that the ban on solicitation is limited only to solicitation using information found in claims files, which access to that information is restricted. Do you maintain that we're supposed to just consider Part A, or do you think we should consider the whole statute? I think, I submit that you consider just Part A for this reason. Part A was enacted almost, well, seven decades before the rest of the statute, so that to the extent that there's this ban... It's true that it was enacted, but it was also blessed again. Well, it was... Recently, yes, sir. Yes, it was. But here's the point, that if there was this connection between the ban on solicitation and the new provisions limiting access to claims files, and the new provisions that removed the claims files from being public records, the legislature could have said so. The legislature could have said the ban on solicitation only applies to using information obtained in violation of the limitation on access. That would have been a lot of words, wouldn't it? Do we not get that from the context? Obviously, that's the argument. Right. That this is all about privacy and the property right. And the argument on the other side, counsel, and address it if you would, please, is that in essence, this is a case about property, not speech. Well, you know... The state's property that is to be private because it's the claimant's information. So as long as we establish that, I would love you to address it in those terms. Okay. So, and please correct me if I wander off and I'm not addressing it exactly as you framed it. But this case isn't only about, or the issue here isn't restriction of access to the state's property. The issue here is... Is it partly about it? Is it partly about it? You said it's not. Is it partly about that? No, I would say not. Now, the district court disagreed, of course. Yes. But here is... You can solicit or you... It's possible to solicit and do a targeted solicitation without using the information obtained. It's lawful. Well, it would... Right now, that's the question. You're saying it's unlawful under your theory. Under my theory, it is unlawful. And what we have here is that the state is saying we're restricting solicitation in order to protect these claims files. But as you read the district court's opinion, solicitation, targeted solicitation, is prohibited, whether you're using information from claims files or not. Also... Not to my knowledge. Indeed, this case may be the first time that this statute has come up. Okay. Now, it was discussed... Even under the old statute, you're not aware of any prosecution under the old statute? No, I'm not. Now, I will say, though, that if you look at the few cases by the Ohio courts, common pleas court's decisions, you've got the claimant's counsel case, where the court determined that there was no access to the records and said, if we had determined... And this is paraphrasing. But if we had determined that there was access to the records, then we would have to decide... In other words, if it were legitimate that these records were public records and you could have access to them, then we would have to determine whether using those records to solicit violated the ban on solicitation. In other words, the first step would be to say, yes, you can legitimately have access to those records. And then the second step is, oh, we're not going to let you have those records if you're going to use them to solicit. And that is exactly what happened in the D'Amico case, which was in front of the Franklin County Common Pleas Court. Initially, the Franklin County Common Pleas Court said that the plaintiff in that case could have access to the records pursuant to the journalist exception. It later came out that the plaintiff in that case was going to use those records for targeted solicitation. And the Franklin County Common Pleas Court then at that point said, no, you can't have access to the records because you're going to use them to violate the prohibition on solicitation. This is just the flip of what the district court held. The district court said, well, this ban on solicitation is designed to protect the records. What the Franklin County Common Pleas Court said is the restriction on the records is used in furtherance of the ban on solicitation. What about, what's the situation in Ohio that a person has a workers' compensation claim? Is that ordinarily just done by the claimant or can the claimant bring a lawyer into the case on his own? Well, that's to the point of what's the public interest here. And Ohio's regulations require that the Bureau of Workers' Compensation put the claimant on notice that they have the right to counsel and the right to representation. And realistically, most are represented by counsel. That, I don't know, there are. Most. Most, I would guess, are represented by counsel or represented because Ohio has this curious system where you don't have to be a lawyer to represent someone in front of the Industrial Commission or the Bureau of Workers' Compensation. Like Social Security on the federal level, you're saying. I'm not very familiar with Social Security, but yes. Well, are the proceedings public? They are. Okay. Now. So you're saying that you could not solicit anybody to be their lawyer at all under section. Or a non-lawyer representative under this section. You could not solicit them, but you could wait in your office and if they come in, then you could represent them. That could be, yes. But your client actually used this when the records were public. Right. Your client was doing very well in the business, using the benefit of the public. When the General Assembly in Ohio changed that, then it's true, isn't it, that your client then circumvented the new law using the, well, the argument is, using an intermediary in order to get the same records. Someone, the Attorney General will say, posing as a reporter, member of the press, and got the same records via that little, true or not, ruse, we'll call it at the time. It wasn't a direct, the same benefit this firm enjoyed before. I may disagree with your characterization. Yes. I agree. I feared you might. The argument, then, is why would they, why did they need to use that intermediary? They did. They got somebody to get them the records. Do you disagree with the characterization that this statute actually is awash with references to privacy? That privacy is, throughout the statute, the various parts, target privacy, privacy, privacy. Thou shalt not, but you can, because we've, in the public interest. Over and over, it speaks of that interest. There's language that said, info the statute shields. Right? Isn't that privacy language? The statute is shielding this information, is it? I would disagree. Okay. And the reason, respectfully disagree. Of course. But I would disagree. We understand that. And the reason is, if you look at the statute, yes, they talk about privacy and confidentiality. Is that? But. Okay. First of all, they are saying that the journalist can have access to information, but not all the information. So the journalist only gets addresses and telephone numbers. I'm not sure what the purpose of that is, but it would seem to me that that is almost inviting the journalist to follow up and contact the people. To find out who they are. If all you have is an address and a phone number, and you know nothing more, that, to me, does not seem to be protecting the privacy. The other thing is, that if you. Wrap up. Go ahead. Oh, I'm sorry. You finished that. The other thing is, that when we tie it back to the ban on solicitation, the ban on solicitation is a ban on soliciting authority to represent someone. So, if you're a chiropractor, and you get this information, you could solicit, arguably, and not violate the ban on solicitation. Because you're not soliciting for authority to represent. This is directed only at representatives and lawyers. Thank you. Mr. Hendershot. Judge Cook, Judge Seiler, Judge Bush, may it please the court. Everything throughout this litigation, my friend here has taken aim at a statute that we would say does not exist. All of his First Amendment arguments are tied to this being a complete, unqualified ban on solicitation. But for three categories of reasons, that's not the statute that you have before you. Judge Bush, as your question highlighted, has this ever been used in the way that my friend says? There's information in the record from a multi-decade employee of the Bureau that says it's never been interpreted that way. One of the Bevan Firm's principal lawyers says in his declaration he's not aware of it ever being used in that way. Let me ask you about that point. So, as I understand it, before the new statute was enacted, it was a public record. The names and addresses and telephone numbers were public records at the Bureau. Is that correct? Well, I think what happened, and I think the most accurate way to characterize, that was a change in 2006. Before 2006, some records, the Bureau was releasing them. I think the most accurate thing to say is that before that, there was an internal dispute about whether they were subject to the public records law. And what the General Assembly did in 2006 was clarify that they should not be public records. And that's in Part B of the statute now. And Part C really puts a bookend to that by saying these are for the exclusive use of the Bureau and the Industrial Commission. Okay. My understanding was the Bevan Firm was getting information from the Bureau to solicit clients prior to 2006. Is that correct? That's absolutely right. I guess what I want to say is that there was… Okay, well, this supports your point, I think. The fact that they were getting the information and there was no prosecution of them for solicitation in that era. Is that correct? Yes, that's absolutely right. Are you aware of any prosecution or solicitation prior to this current case? No, I'm not aware of any, and certainly none that would have been targeted at, as my friend interprets it, sort of any solicitation using union contacts, past client lists, anything besides the information that is the Bureau's. The only thing this reaches, the District Court at page 1256 of the record called this an enforcement mechanism. It's an enforcement mechanism for the information that is exclusively the Bureau's. So it's only solicitation that uses information extracted from the Bureau, which is what you have on the facts here. You have a $1,000-a-month relationship for someone who holds herself out as a journalist to extract that information from the Bureau to use it to solicit. And the current prosecution is just of the journalist. You're not trying to prosecute the Bevan Firm, per se. This, I want to make sure that we understand, it's outside the record, but there's not an ongoing prosecution. There was an investigation that was started, and that's what tripped off, as I understand it, what caused the Bevan Firm to file the Federal lawsuit. But there was an investigation into several things, one of which touched on this, this extracting the private information from the Bureau. Okay. Does this law prohibit attorneys from soliciting claimants, period? No. It prohibits. But it looks like Part A does, doesn't it, if you take Part A by itself? Let's focus just on the language and structure of Part A, and then I'll come around to some principles of constitutional avoidance. But Part A says, and I'll put some ellipses in here, you shall not solicit authority from a claimant or employer about a claim or appeal that has been or may be filed. So they can't solicit Joe Smith down the street if he's filed a claim. Is that what you're saying? If that information comes from the Bureau, if you know the person is a claimant, and so that's why to skip ahead to the middle part of the ellipses there, it talks about a claimant and about a claim that has been or an appeal that may be filed. And so that shows, as the district court said, this entire statute focuses on privacy. So that language, a claimant or a claim that has been or an appeal that may be filed, shows that we're talking about targeting those that have an active claim. But if you're a neighbor of someone who is a claimant, and you're not even a lawyer, and you go to their house and you say, oh, I'm so sorry that you've had this problem in your work. I'd like to represent you in front of the Bureau. Would that be in violation of Subsection A? If you found that out from your neighbor saying to you first, I was hurt at work, and then you start the conversation, no. What if you just found out, maybe you just saw your neighbor limping into their house, and you went over to their house and said, oh, well, you should file with the workers' comp people because you have a claim. You might have a claim, and I'd be happy to help you. Would that violate Subsection A? No, it is only solicitations that use information extracted from the Bureau. The protected state information. Where in that sentence does it say that, though, in Subsection A? I'm looking at the second sentence. I don't see anything about using information from the Bureau. It just simply says no person shall directly or indirectly solicit authority or pay, and it goes on, to solicit authority from a claimant or employer to take charge of or represent the claimant or employer with respect to any claim or appeal which is or may be filed with the Bureau or Commission. So I don't see anything about using the claim file in that sense. Textual point, contextual point, and a constitutional avoidance point. Textually, it is soliciting authority. That's a personal request expecting a personal response to a person that you know to be a claimant. The word claimant in the statute is a textual hook to using the Bureau's information, and then it's soliciting about a claim or appeal that has been or an appeal that may be filed. And so there, textually, it connects the restriction to information in the possession of the Bureau. And now the contextual point. When you look at Parts B and C, Part B makes clear this information is outside Ohio's otherwise very broad public records law, and Subpart C says this information is for the exclusive use of the Bureau and the Industrial Commission. And this is something not in the record, but when the Bureau gives this information out under the very limited exception for journalists, it tells the journalist this is not public information, this is not to be used for solicitation. And a question did arise about, well, what is the point of that exception? Well, the point of it is to allow journalists to contact claimants or employers to do public interest reporting about, say, workplace safety. What's your best language in Part A that shows that Joe Smith can't be solicited down the street when the lawyer finds out he's been hurt on the job? Well, Your Honor, we're saying that if he finds out in any way except by extracting the Bureau's private information, then that is not covered by the statute. Is that covered in Part A, or do you have to consider all the parts of the statute? Certainly under Ohio principles of statutory construction, you should consider the entire thing as it exists now. Is there language in Part A that you would zero in on to support that statement? Yes. Is it claimant? Just the word claimant is all you've got. Well, it's claimant, and then further down where it says a claim that has been filed or an appeal that may be filed, it's talking about someone in the system. When it says may be filed, then that suggests they're not a claimant yet, right? Under the distributive canon, we read that portion to be a claim that has been filed or an appeal that may be filed, so it's all something active. And to support that, look at Parts B and D when it talks again about claimant. It talks about a claimant who has a claim, whether it is active or closed. It's not talking about a potential claim. It's all talking about a claim that exists or maybe has already been closed because that information would still be in there. But all of that is around protecting the information in the hands of the Bureau or the Industrial Commission. But let's take all of that off the table for a moment and turn to principles of constitutional avoidance. Under those principles, and here it exists twice over, if there is any fairly possible reading of the statute that supports what we have said here, then you should read it that way to avoid those constitutional problems. So first, under the federal constitution, if this were, in my friend's words, a complete unvarnished ban on solicitation, it would run headlong into Shapiro v. Kentucky and Edenfield v. Fane. So that is why there's a fairly possible reading. The District Court read it that way and Ohio Court has read it this way. The Bureau has read it that way as well. There's a fairly possible reading that it only prohibits solicitation using the confidential information. What's the penalty for a lawyer violating subsection A? It is a misdemeanor. So if you look at 4123.99, it lays out the consequences for violating this. Is public interest defined? Public interest is not defined in this statute. The one Ohio court that has looked at this case, my friend mentioned, the Damico decision concluded that using this information, it was undisputedly a journalist in that case, using the information to solicit is not in the public interest. Why isn't offering your services to represent someone in the public interest? First of all, the Bureau makes it known that you can hire counsel. So this is just a limited protection of the privacy of the information in the hands of the Bureau and the Industrial Commission. So the public interest in the context of this journalist exception is being contacted by a journalist. And that's made plain when the Bureau turns over this very limited information on occasion to journalists. What is a journalist? A journalist is someone who has their regular occupation to disseminate information to the general public. If a law firm has a blog, would they be considered journalists? I think if a law firm ran a blog, that blog was meeting that definition. It was regularly publishing, disseminating information to the public. They might meet that. But the key point is they would not be acting in the public interest by extracting this information from the Bureau and then using it to solicit clients. And an Ohio court has already said that. But if a lawyer picks up information from a third party that's not a journalist, like a hacker or somebody like that, finds out all these claimants, is that violated if he goes out and solicits representation? If the lawyer did not know the information, because information could be out there in other ways, union list, past client list, and so forth, using information with no knowledge that had been wrongly extracted from the Bureau, in our view, would not violate the statute. I do want to get back to one other point. Is there has to be knowledge or willfulness? I didn't see any of that in the statute. Well, certainly it is a criminal statute. As my friend points out, the rule of lenity. And it's always been interpreted in that way. Let me make one other point about constitutional avoidance that I wanted to circle back around to. Certainly under the federal constitution, there is a reason to read the statute narrowly because of the First Amendment. There's also a problem under the state constitution because the Ohio constitution commits to the Ohio Supreme Court the exclusive authority to regulate the practice of law. If this were a complete and total ban on solicitation, it would run headlong into that power of the Ohio Supreme Court. In fact, under a rule that that court has written, Rule 7.3, it permits solicitations with certain restrictions. If this would prohibit all solicitation, it would run square into that. So that, again, is a reason if there's a fairly possible reading, again, the district court read it as what it called an enforcement mechanism, and Ohio court has read it as the solicitation having a necessary link back to information in the hands of the Bureau or the Industrial Commission, then those principles of avoidance mean reading it narrowly. Again, the only attack that my friend here makes on this statute is to say it violates the First Amendment if it is a complete and total ban. It is not a complete and total ban as no court has read it that way. It has not been enforced that way. The text and structure don't support that. Ultimately, principles of constitutional avoidance twice over show why it should not be read in that way. So all you need to conclude to affirm is that the statute is not a total ban on solicitation. If there are no further questions, we would ask that you affirm. Thank you. Thank you. I also have one more question if you would return. There's a requirement that any journalists offer a certification that their intent is using the info in the public interest. Correct. That's subpart D of the statute. Right. You probably don't know the answer. Was there a certification submitted in the underlying effort by the plaintiff here to get that info from a journalist? I believe there was. Just to elucidate that a little bit, the Bureau is not allowed to probe beneath what is in the public interest, but a court certainly may, and that's what the D'Amico decision did, which is say this solicitation, because it uses the private information, is not in the public interest, and so it shut down a request like that. Let me follow up on that. So that provision under C-4, I'm looking at, neither the Commission or Bureau may inquire. So are you saying, as I read that, the person who's making the certification makes the determination whether it's in the public interest, and they identify what the public interest is and the statute doesn't allow the agency to question that? Is that the reading? That's correct. It doesn't allow the executive power of the state to question it, but certainly the judicial power of the state can interpret that, and that's what an Ohio court has done and said it's not in the public interest to do the exact thing the statute contemplates, which is to keep this information private and to avoid solicitation based on it. Which court? What case is that? That's the D'Amico decision. That's the one that my friend mentioned earlier as well in his presentation. Okay. Thank you. Thank you, Your Honors. Thank you, Counsel. Your turn. Thank you. Regarding the effect of the language and the ban on solicitation, the state has argued that this is not a total ban, but we are left confused by the district court's decision. And the district court, at page 7 of its decision, says here the claimant information cannot be found anywhere other than the list maintained by the state. As a result, without protected claim information, there can be no targeted communication and no solicitation. Now, this is, first of all, not consistent with the record, and this is why we're left confused. What's inconsistent? Pardon? What is inconsistent? What's inconsistent is that the nature of Ohio's workers' comp system is that you may have the initial claim, there could be follow-on claims, there could be other issues arise down the road. So Bevin could have claims information in their own files that originally came from the Bureau's files. About this particular claimant or any particular claimant that they formerly represented? Yes. Okay. And they use that information for targeted solicitation. That's in the record. That was testimony that was in the record. They also have, of course, the files that they obtained prior under the public records request when they were still able to obtain that information. And, again, the nature of workers' comp work is that that information could still be relevant many years later. And so they use that information in their targeted solicitation. How would they know that that former client has now filed a claim? They wouldn't know, and that would be one reason for the solicitation. You mean they just send out a letter to all former clients that they were 1st of January or something like that? Well, I think it's a little more targeted than that. But, yes, essentially that's what they would be doing. They also pull information from other sources, whether it could be looking at zip codes and volume of claims filed in certain zip codes. So the point is, even if you're not using information obtained through this journalist exception, you should still be allowed to do targeted solicitation. And the district court's opinion leaves us a little confused on that point. The next thing, I'm losing my train of thought here, is that the ban on solicitation is broadly drawn, or at least the plain language is broad, and it is not necessary to protect the privacy of the statute. And here's where I disagree with the reading of the D'Amico case by Appellee's Counsel. The D'Amico case, as I read it, and, again, the procedural history of the case is that, yes, you can have access to this information, but if you're going to use this information to violate the prohibition on solicitation, then we're not going to let you have access to the information. In other words, they're saying that we limit access to the information as a further enforcement mechanism to affect the ban on solicitation. That is the opposite of what the state has suggested here. The state has said, oh, the ban on solicitation serves protecting the privacy of the records. And that is not how the Franklin County Common Pleas Court read the case or read the statute. I don't get the difference. The difference is, on one hand, you're saying we're not going to let you solicit because we're protecting the privacy of these records. This is about somebody's reading of the policy behind the statute. It's that court's reading of the policy. And isn't the policy consistent? No. Thou shalt not use state info. I would disagree. Because what the Franklin County Common Pleas Court is saying is that we have this ban on solicitation. Oh, you say. Okay. You can't solicit. And one of the reasons we're not letting you have access to these records is that you're going to use them to solicit. It's not saying we are banning solicitation because we don't want to have this incentive to extract the information from the claims files, which is really what the state is arguing here. They're saying that this ban on solicitation or the act of solicitation creates an incentive or an inducement to try and go after this information. And what the Franklin County Common Pleas Court said is, no, we have a ban on solicitation. You can't solicit. And we're not going to let you have access to this information because you're going to use it to violate that ban. And that's how it was worded in the D'Amico case. That was a Common Pleas case? Yes. Franklin County Common Pleas. Yeah. Okay. As has been discussed, there's very little case law under this statute. Right. So with that, I will rest and ask that you overturn the district court. Thank you. Thank you, counsel. We have your arguments, and I appreciate it. The court will consider them carefully and issue an opinion in due course. Thank you. And we will have the next case, please.